**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SINCERE SMITH,

                         Plaintiff,

          v.

MILLER, et al.,                                    No. 9:20-CV-1435
                                                   (GTS/CFH)

                         Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

SINCERE SMITH
18-A-4013
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403
Plaintiff pro se

Attorney General for the                  BRENDA T. BADDAM, ESQ.
State of New York                          Assistant Attorney General
The Capitol
Albany, New York 12224
Attorneys for defendant(s)

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

          Plaintiff pro se Sincere Smith ("plaintiff"), an inmate who was at all relevant

times in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS"), at Great Meadow Correctional Facility

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

("Great Meadow"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Superintendent ("Supt.") Christopher Miller ("Miller"); Corrections Officer ("C.O.") B. Huggler ("Huggler"); Sergeant ("Sgt.") John Doe ("Doe")[2]; C.O. A. Downing ("Downing"); and Deputy Superintendent of Security ("D.S.S.") Frasier ("Frasier")[3] (collectively "defendants") violated his constitutional rights under the Eighth Amendment.  See Dkt. No. 2 ("Compl.").  Presently before the Court is defendants' Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, and in the alternative, a Motion to Dismiss the complaint as it relates to defendants Miller and Frasier.  See Dkt. No. 23.  Plaintiff filed a response.  See Dkt. Nos. 27, 29.  Defendants filed a reply. See Dkt. No. 28.  For the following reasons, it is recommended that defendants' (1) Motion for Summary Judgment be denied; and (2) Motion to Dismiss, as it relates to defendants Miller and Frasier, be granted.

## I. Background

---

[2] Plaintiff is reminded of his duty to take reasonable steps to identify the John Doe defendant, and to move to amend his complaint to name the proper party, or his claim will be subject to dismissal against the John Doe defendant.  See Coward v. Town & Vill. Of Harrison, 665 F. Supp. 2d 281, 300-302 (S.D.N.Y. 2009).

[3] Both parties spell defendant Frasier's name in different ways.  See, e.g., Dkt. No. 2 ("Compl.") at 1-2 (plaintiff spelling defendant's name as "Frasier" in the case caption, followed by "Fraser" in listing the defendants); see also Dkt. No. 23-1 at 4, 9 (defendants using spellings, "Fraser," and "Frasier," in their Motion for Summary Judgment).  For the purposes of this Report-Recommendation and Order, the Court will use the following spelling: Frasier.

On review of defendants' Motion for Summary Judgment, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party.  See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

## A.  Factual Background

On October 4, 2020, plaintiff was in the Great Meadow recreational yard when he and seventy to 100 other inmates were told to "line up" and "pair up."  Compl. at 7.  At this time, defendants C.O. Huggler, C.O. Downing, and Sgt. Doe were in the yard.  See id.  While lining up, plaintiff was "slashed from behind by an unidentified assailant."  Id. at 8.  Plaintiff filed a grievance on October 4, 2020, complaining of the "disregard for social distancing" and the lack of security measures.  Id. at 11.  Plaintiff never received a response to his grievance.  See id. at 4.  On October 19, 2020, plaintiff wrote a letter, "To Superintendent[,]" inquiring about his grievance "which was not officially filed."  Id. at 4, 12.[4]

## II. Legal Standards[5]

## A.  Motion for Summary Judgment

---

[4] Plaintiff has provided the Court with a copy of his grievance and the letter to the Superintendent.  See Compl. at 11-12.

[5] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the burden of showing the absence of a genuine dispute of material fact by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. Celotex, 477 U.S. at 322; see FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248, 250; see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)

4

(citing Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)).  Furthermore, "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally." (internal quotation marks and citations omitted)).

## B.  Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration.  See 42 U.S.C. § 1997e(a) ("No action shall be

brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See id. at 524.  "In order to satisfy the exhaustion requirement, a plaintiff must complete the administrative review process in accordance with the applicable procedural rules of the facility" in which he or she is incarcerated. Hale v. Rao, 768 F. Supp. 2d 367, 376 (N.D.N.Y. 2011); see Jones v. Bock, 549 U.S. 199, 218 (2007).  In accordance with the PLRA, DOCCS "has made available a well-established inmate grievance program ["IGP"]."[6] Smith v. Kelly, 985 F. Supp. 2d 275, 280 (N.D.N.Y. 2013).

"Generally, if a prisoner has failed to properly follow each of the required [] steps of the [] grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal." Smith, 985 F. Supp. at 283; see also Ruggiero v. Cnty of Orange, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds

---

[6] DOCCS has a well-established administrative review process. See N.Y.C.R.R. § 701.1(a).  First, an inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one calendar days of the alleged incident. See id. § 701.5(a).  Second, an inmate may appeal IGRC's decision to the facility's Superintendent. See id. § 701.5(c)(1).  Third, an inmate may appeal the Superintendent's decision to the Central Office Review Committee ("CORC"). See id. § 701.5(d)(1)(i). "There is also an expedited procedure for complaints raising bona fide issues of harassment or other misconduct by DOCCS staff, which bypasses the IGRC, and initially refers the grievance to the facility superintendent or his designee for prompt review, investigation, and decision." Ferguson v. Mason, No. 9:19-CV-927 (GLS/ATB), 2021 WL 862070, at *2 (N.D.N.Y. Jan. 7, 2021), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021) (citing 7 N.Y.C.R.R. § 701.8).

out, and doing so *properly* (so that the agency addresses the issues on the merits).")
(quotation marks and citations omitted).

Although the Supreme Court of the United States has deemed exhaustion
mandatory, the Second Circuit recognizes certain exceptions. See Ruggiero, 467 F.3d
at 175 (2d Cir. 2006).  The Supreme Court made clear that "[c]ourts may not engraft an
unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."
Ross v. Blake, 578 U.S. 632, 648 (2016).  The Supreme Court further determined that
the PLRA's "exhaustion requirement hinges on the 'availab[ility]' of administrative
remedies[.]"  Ross, 578 U.S. at 642.  "To constitute an 'available' remedy, a process
requires only 'the possibility of some relief.'"  Green Haven Prison Preparative Meeting
of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision, 16
F.4th 67, 82 (2d Cir. 2021) (quoting Ross, 578 U.S. at 643) (emphasis omitted).

There are "three kinds of circumstances in which an administrative remedy,
although officially on the books, is not capable of use to obtain relief."  Ross, 578 U.S. at
643.  First, "an administrative procedure is unavailable when (despite what regulations
or guidance materials may promise) it operates as a simple dead end—with officers
unable or consistently unwilling to provide any relief to aggrieved inmates."  Id. (citing
Booth v. Churner, 532 U.S. 731, 736 (2001)).  "Next, an administrative scheme might be
so opaque that it becomes, practically speaking, incapable of use."  Id.  Lastly,
administrative remedies are unavailable where "prison administrators thwart inmates
from taking advantage of a grievance process through machination, misrepresentation,
or intimidation."  Id. at 644.

Although there is no dispute that plaintiff failed to exhaust his administrative remedies, whether those remedies were available to him requires further inquiry.  See Dkt. No. 27 at 9, ¶2.  The Second Circuit has decided that when a grievance goes unfiled and unanswered, "the process to appeal . . . is prohibitively opaque, such that no inmate could actually make use of it."  Williams v. Correction Officer Priatno, 829 F.3d 118, 126 (2d Cir. 2016).  In Williams, the plaintiff, housed in the special housing unit ("SHU"),[7] "gave [his] grievance to a correction officer to forward to the grievance office on his behalf, in accordance with DOCCS grievance procedures that apply to inmates in the SHU."[8]  Id. at 120-21.  The Court held that "in giving his grievance to the correction officer, Williams exhausted all administrative remedies that were available to him."  Id. at 126.  "The plaintiff supported [his] allegation [of unavailability] by providing the court with the date he filed the grievance, the procedure for how he filed it, and the timeline for roughly when [] subsequent follow-up conversations occurred."  Ozzborn v. Cornell, No. 9:17-CV-1039 (MAD/ATB), 2021 WL 2227829, at *4 (N.D.N.Y. June 2, 2021) (citing Williams, 829 F.3d at 121).

By contrast, when an inmate who is not housed in the SHU submits a grievance directly to the Inmate Grievance Resolution Committee ("IGRC"), generally, administrative remedies are considered available even when the inmate does not

---

[7] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single- or double-occupancy cells grouped so as to provide separation from the general population . . . ."  See N.Y. COMP. CODES R. & REGS. ("7 N.Y.C.R.R.") § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reason, or in other circumstances as required.  See id. at pt. 301.

[8] 7 N.Y.C.R.R. 701.7(b) requires that SHU inmates "use centrally located IGP deposit boxes to send grievance forms" and that IGP staff shall collect the contents from these boxes "at least two times per week."  7 N.Y.C.R.R. 701.7(c)(1) further requires that "[a]n IGRC staff member (sergeant, officer) or grievance supervisor shall make rounds of all special housing areas at a reasonable time at least once a week to allow inmates direct access to the program."

receive a response.  See Cicio v. Wenderlich, 714 F. App'x 96, 97-98 (2d Cir. 2018)

(summary order) (distinguishing Williams and holding that "the regulations provide a

right to appeal" when the "prisoner has filed a grievance but receives no response[.]").

"Inmates not housed in the SHU are in a different position to SHU inmates when

determining if grievance procedures are 'essentially unknowable' or unavailable."

Rodriguez v. Cross, No. 9:15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y.

May 9, 2017), report and recommendation adopted, 2017 WL 2790530 (N.D.N.Y. June

27, 2017); see also Coleman v. Nolan, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *12

(N.D.N.Y. Oct. 2, 2018) ("[A]n inmate depends on correction officers to forward a

grievance" while housed in the SHU).  Accordingly, this Court has granted summary

judgment where the plaintiff "was not hampered by confinement in the SHU[,]" "dropped

the grievance in the 'box' himself[,]" and "has not documented, or testified to, any effort

to re-submit the alleged grievance, nor does he allege that he made any inquiries about

the lack of response from DOCCS."  Means v. Olmsted, No. 9:17-CV-746 (BKS/ATB),

2019 WL 4395289, at *7 (N.D.N.Y. June 3, 2019), report and recommendation adopted,

2019 WL 3451127 (N.D.N.Y. July 31, 2019).

This Court has concluded that, "despite some district court opinions suggesting

otherwise, [] the reasoning of *Williams*, which found that DOCCS procedures provided

no clear guidance on how any inmate should proceed if a grievance is never filed, would

apply even when the inmate is not confined in SHU."  Nolan, 2018 WL 4732778, at *12;

see also Grayson v. Courtney, No. 9:16-CV-1118 (GLS/ATB), 2018 WL 6933296, at *6

(N.D.N.Y. Dec. 3, 2018), report and recommendation adopted, 2019 WL 110951

(N.D.N.Y. Jan. 4, 2019) (extending Williams to apply to an inmate not housed in the

SHU, but granting the summary judgment because "[t]he only evidence in the record that [the] plaintiff actually attempted to file such a grievance was the unsupported allegation in his amended complaint . . . and the more expansive claim during his deposition . . . that [the plaintiff] unsuccessfully attempted to file grievances at least seven times[.]").  In Britt v. Carberry, the plaintiff submitted two grievances: one he wrote while housed in general population and submitted directly to the grievance office; and the other he wrote while housed in the SHU and handed to a prison guard.  See No. 9:17-CV-0234 (MAD/DEP), 2019 WL 3365766, at *8-11 (N.D.N.Y. Mar. 22, 2019), report and recommendation adopted, 2019 WL 2437912 (N.D.N.Y. June 11, 2019).  The plaintiff "did not receive a response, did not follow up, and did not appeal[]" either grievance.  Id. at *9.  The Court denied summary judgment on the exhaustion issue because the plaintiff's situation was "complicated by his immediate transfer to" another facility.  Id. at *10.  As such, the Court could not "easily conclude" that administrative remedies were available to the plaintiff.  Id.

In addition, courts in this Circuit have looked to what, if any, corroborating documents a plaintiff presents to support his claim of unavailability.  This Court has denied summary judgment where the plaintiff provided copies of grievances or letters.  See Braxton v. Bruen, No. 9:17-CV-1346 (BKS/ML), 2020 WL 5752333, at *7 (N.D.N.Y. Aug. 24, 2020), report and recommendation adopted, 2020 WL 5751172 (N.D.N.Y. Sept. 25, 2020) (denying summary judgment where the plaintiff "provided extensive deposition testimony regarding his efforts to file grievances and appeals and proffered copies of his grievances, appeals, and letters."); see also Ortiz v. Annucci, No. 17-CV-3620 (RJS), 2019 WL 1438006, at *9 (S.D.N.Y. Mar. 29, 2019) (denying summary

judgment where, "[i]n support of his version of events, Plaintiff points not only to his own testimony, but also to a copy of the alleged grievance."); Thompson v. Booth, No. 16-CV-03477 (PMH), 2021 WL 918708, at *8 (S.D.N.Y. Mar. 10, 2021) (denying summary judgment where the plaintiff "annexed to his Declaration what he represents to be copies of the latter two grievances" and elaborated about his attempts to file them in his declaration and deposition).  Finally, this Court has denied summary judgment even where the plaintiff "d[id] not have a copy of the grievance, was not confined in the SHU, and has not submitted any contemporaneous correspondence inquiring about the status of his grievance[,]" but testified that he submitted a handwritten grievance and followed up with the grievance office.  Maldonado v. Mandalaywala, No. 9:17-CV-1303 (BKS/TWD), 2020 WL 1159426, at *17 (N.D.N.Y. Feb. 12, 2020), report and recommendation adopted, 2020 WL 1157643 (N.D.N.Y. Mar. 10, 2020).

### III. Arguments

### A.  Defendants' Arguments

Defendants contend that plaintiff's complaint should be dismissed in its entirety for failure to exhaust administrative remedies because he did not file a grievance despite the availability of the grievance procedure.  See Dkt. No. 23-1 at 9-11.  They argue that, based upon a review of plaintiff's grievance records at Great Meadow, plaintiff did not file any grievances or submit any written requests for an extension of time to file a grievance concerning the October 4, 2020, incident.  See Dkt. No. 23-4 at

5-6, ¶20.  Defendants also provide that IGP records reveal that plaintiff did not file any appeals related to the October 4, 2020, incident.  See Dkt. No. 23-5 at 4, ¶13.[9]

Next, defendants argue that plaintiff was aware of the appropriate grievance process because he underwent grievance training during his orientation.  See Dkt. No. 28 at 8; Dkt. No. 23-4 at 8.  Further, defendants cite an IGRC response that plaintiff provides from Upstate Correctional Facility ("Upstate") regarding an unrelated incident.  See Dkt. No. 28 at 9 (citing Dkt. No. 27 at 14.)  There, Upstate advised plaintiff to submit a new grievance to the IGRC if he felt a previous grievance had not been filed.  See Dkt. No. 27 at 14.  Defendants argue that, because he was advised on how to proceed if he thought a grievance was unfiled, "[p]laintiff's failure to follow up regarding his alleged grievance is even more inexcusable."  Dkt. No. 28 at 9.

Defendants also argue that that 7 N.Y.C.R.R. § 701.5(d)(3)(i) "provide[s] specific guidance to Plaintiff on how to proceed when he realized that his grievance had not been received by the Central Office Review Committee ('CORC')."  Dkt. No. 28 at 5.

---

[9] Defendants argue that plaintiff filed the present action before "the time for the IGRC to respond to his October 4, 2020 letter" or "the time for the Superintendent to respond to his 'appeal'" lapsed.  Dkt. No. 23-1 at 10.  Generally, administrative remedies must be exhausted prior to filing an initial complaint; thus, exhaustion during the pendency of the federal suit is insufficient.  See Neal v. Goord, 267 F.3d 116, 122-23 (2d Cir. 2001), abrogated on other grounds by Porter, 534 U.S. at 532.  The IGRC has sixteen days to respond to an initial grievance, and the superintendent has twenty days to respond to an appeal.  See 7 N.Y.C.R.R. §§ 701.5(b)(1), (c)(3).  The Second Circuit has held that "an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations."  Hayes v. Dahlke, 976 F.3d 259, 270 (2d Cir. 2020).  In coming to this conclusion, the Court "join[ed] six other circuits that have considered state prison procedures with similar mandatory deadlines and found that the administrative remedies were either exhausted or 'unavailable' when the prison did not respond within the allotted time."  Id. at 270-71; see, e.g., Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019) ("[W]e hold that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement.") (emphasis added).  However, given that plaintiff's primary argument is that his grievance was never actually filed, it is unclear whether Hayes, and its implications about an administration's lack of response, would apply.  Cf. Nolan, 2018 WL 4732778, at *11 ("The case law in this Circuit is relatively clear that Williams should be applied only when an inmate's grievance is never filed, as opposed to when a grievance is filed, but not responded to on a timely basis by prison officials.")  Thus, for purposes of this motion, the undersigned cannot determine conclusively that plaintiff filed his federal suit prematurely.

Therefore, defendants contend that plaintiff failed to exhaust his administrative remedies when he did not write "any follow up letters with the grievance office at Great Meadow or with CORC despite not receiving a response from CORC."[10]  Id.

Finally, defendants distinguish Williams, contending that "[p]laintiff was housed in general population for the entirety of the allotted time period to file his grievance."  Dkt. No. 28 at 7.  To support their contention, defendants cite generally to Great Meadow IGP Supervisor Mead's and IGP Director Seguin's declarations.  See id. at 7-8 (citing Dkt. Nos. 23-4, 23-5).  Neither declaration specifies whether plaintiff was housed in the SHU.  See generally Dkt. Nos. 23-4, 23-5.

## B. Plaintiff's Arguments

In response to defendants' motion, plaintiff submits a Memorandum of Law (Dkt. No. 27 at 1-8); a "declaration" (Dkt. No. 27 at 9-12); and a supplemental response (Dkt. No. 29).[11]  Plaintiff alleges that the administrative process was confusing, and that "the

---

[10] Defendants cite to plaintiff's response where he writes that he "took that final step in his attempt to appeal[,]" and construe the statement to mean that plaintiff appealed to the CORC.  Dkt. No. 28 at 9; see also Dkt. No. 27 at 10, ¶6.  However, in plaintiff's response, prior to explaining that he "took that final step," he refers back the preceding paragraph where he discusses the "unofficial appeal" he attempted to submit to the superintendent.  Dkt. No. 27 at 10, ¶5.  Therefore, it appears that plaintiff's "final step" was the "unofficial appeal" to the superintendent, not an appeal to the CORC.  Id.; see generally Compl; Dkt. No. 27.  7 N.Y.C.R.R. § 701.5(d)(3)(i) informs an inmate to "contact the IGP supervisor in writing" if he "does not receive a copy of the written notice of receipt[,]" but this provision would only be triggered if plaintiff reached the third level of the process by appealing the superintendent's decision to the CORC.

[11] Plaintiff's Memorandum of Law is unsworn.  See Dkt. No. 27 at 1.  In plaintiff's declaration, he submits that he has "read the foregoing decl[a]ration and hereby verif[ies] that the matters therein are true, except to matters alleged on information and belief, and as to those, I believe them to be true and accurate."  Dkt. No. 27 at 12.  Plaintiff's supplement does not contain such language.  See Dkt. No. 29.  Generally, a statement will fail where it does not include the "under penalty of perjury" language required in 28 U.S.C. § 1746.  Davis v. Grant, No. 15-CV-5359 (KMK), 2019 WL 498277, at *1 (S.D.N.Y. Feb. 8, 2019).  In light of special solicitude, the Court will consider plaintiff's response and supplemental response in their entirety as they are based on plaintiff's personal knowledge.  See Shepherd v. Fischer, No. 9:10-CV-1524, 2015 WL 1246049, at *8 n.22 (N.D.N.Y. Feb. 23, 2015) ("[C]ourts in this circuit routinely consider [unsworn] statements in connection with a motion for summary judgment where the proponent of the statements is a pro se litigant, mindful of the duty to extend special solicitude to those individuals."); see also Berry v. Marchinkowski, 137 F. Supp. 3d 495, 530 (S.D.N.Y. 2015) (same).

remedy operates as a simple dead end." Dkt. No. 27 at 10-11.[12]  Plaintiff alleges that

he submitted a grievance on October 4, 2020, by placing it on his cell door "for [the]

officer who was working to take his grievance and place it in the institutional mail box

[sic]."  Dkt. No. 27 at 9, ¶4.  Then, "[w]hen plaintiff received no response on the 19th day

of October 2020, plaintiff drafted his unofficial appeal and placed it on the door for it to

be submitted into the institutional mail box [sic] for the superintendent."  Id. at 10, ¶5.  In

his complaint, plaintiff does not explain the efforts he took to file his grievance or the

letter, but summarily states "I attempted to file them[.]"  Compl. at 4.[13]  In his response

plaintiff admits that sending a letter to the superintendent is "off course of the grievance

directive" but contends that he did not know the appropriate procedure for appealing

when he did not receive a response.  Dkt. No. 27 at 10, ¶6.

Plaintiff provides an unrelated "Appeal to CORC" that he wrote in "Upstate C.F.

. . . while desperately trying to appeal" an unrelated grievance.  Dkt. No. 27 at 12-13.  In

a letter dated September 16, 2019, plaintiff complained to Upstate that Sing Sing

Correctional Facility ("Sing Sing") never responded to a grievance.  See id. at 13.

Upstate explained, "[i]f the grievant feels there are grievances that have not been filed,

he should submit them to the IGRC office for remedial action as deemed necessary by

---

[12] Plaintiff applies the Hemphill "special circumstances" framework.  See Dkt. No. 27 at 6 (citing Hemphill v. New York, 380 F.3d 680, 689 (2d Cir. 2004)).  However, as of 2016, the Court must apply the Ross framework.  See Ross, 578 U.S. at 648 (abrogating Hemphill and explaining that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.").

[13] "[T]he undersigned notes that [a] verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . ."  Cucchiara v. Dumont, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *3 (N.D.N.Y. Apr. 26, 2019), report and recommendation adopted, 2019 WL 2514234 (N.D.N.Y. June 18, 2019) (quoting Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (abrogated on other grounds by Tangreti, 983 F.3d 609 (citations and internal quotation marks omitted).  Plaintiff's complaint was properly verified by declaration under 28 U.S.C. § 1746.  See Compl. at 16; see also LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65 (2d Cir. 1999) (holding that use of the "[u]nder penalty of perjury" language "substantially complies with [the] statutory requirements" of 28 U.S.C. § 1746).

the [Inmate Grievance Program Supervisor]." Id. at 14.  Although the issues underlying

the Upstate communications are unrelated to plaintiff's claims before this Court, he

argues that they are "very relevant" in showing "that the grievance procedure was

unavailable & staff members would basically 'spin me in a circle' in other words

'rail[]road me.'" Id. at 12.

As for his housing location, plaintiff contends that, "he in fact was placed in

(SHU) at all relevant times, while attempting to exhaust his administrative remedies.

Plaintiff could not possibly place any grievance or let alone anything in the institutional

mailbox personally." Dkt. No. 29.

### C.  Discussion

Plaintiff has not provided any support for his argument that the grievance

process was a dead end.  See Ross, 578 U.S. at 643-44.  To qualify for the "dead end"

exception, "a plaintiff must introduce facts to indicate that prison officials are

consistently unwilling to provide any relief to aggrieved inmates." Miller v. Annucci, No.

17-CV-4698 (KMK), 2021 WL 4392305, at *14 (S.D.N.Y. Sept. 24, 2021) (internal

quotation marks and citations omitted); see Mojica v. Murphy, No. 9:17-CV-0324 (ML),

2021 WL 1318168, at *11 (N.D.N.Y. Apr. 8, 2021); Mena v. City of New York, No. 13-

CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) ("Although Plaintiff's

initial grievance received no response, this alone is insufficient to show that the [Inmate

Grievance and Request Program] acted as a mere dead end.").

Plaintiff next argues that the grievance procedure was so confusing it was

rendered incapable of use, and that the Williams exception to the exhaustion

requirement—for grievance processes that provide no guidance on how to proceed with

an unfiled and unanswered grievance—should apply.  See Dkt. No. 27 at 10, ¶7; 11, ¶11.  Plaintiff demonstrates that he is aware of the steps to take to properly exhaust a grievance.  He details how he attempted to file his grievance and produced copies of the grievance and "unofficial[] appeal[.]"  Dkt No. 27 at 9-10; Compl. at 4, 11-12; see, e.g., Ortiz, 2019 WL 1438006, at *9 (denying summary judgment where the plaintiff's version of events was supported by his deposition testimony and a copy of the grievance); Thompson, 2021 WL 918708, at *8 (relying on the plaintiff's submitted grievance forms, his deposition testimony, and his declaration).  Additionally, plaintiff "attended and successfully completed" an orientation that explained the grievance process[14] (Dkt. No. 23-4 at 2, ¶6; 8), and acknowledged that he knew that his writing a letter to the superintendent as an "unofficial[] appeal" was "off course of the grievance directive."  Dkt. No. 27 at 10, ¶6; Compl. at 12; see, e.g., Day v. Chaplin, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures.").  Plaintiff also demonstrates an understanding of the grievance process by noting that "the grievance directive gives no direction of appealing an unanswered grievance."  Dkt. No. 27 at 10, ¶6; see Williams, 829 F.3d at 124 ("[T]he regulations give no guidance whatsoever to an inmate whose grievance was never filed.")

        Despite plaintiff's knowledge of the grievance procedure, the Court may find that administrative remedies were unavailable to him.  The Southern District of New York has determined that "it is irrelevant for purposes of these claims that Plaintiff was

---

[14] It is unclear whether inmates were instructed on what to do if they believed a grievance had not been filed.  See Dkt. No. 23-4 at 2, ¶5 ("One of the many topics covered in the orientation program is how to file a grievance and appeal grievance complaints.[]  During this orientation program, incarcerated individuals are provided with an orientation manual.")

16

familiar with the grievance process and has successfully filed other grievances[,]" and that he "may have been keenly aware of the grievance process, does not establish that he understood [grievance] regulations that the Second Circuit has held make it practically impossible for someone in Plaintiff's position to ascertain whether and how he could pursue his grievance[.]"  Miller, 2021 WL 4392305, at *11 (internal quotation marks and citations omitted); see also Williams, 829 F.3d at 124; Ortiz, 2019 WL 1438006, at *9 ("If anything, Plaintiff's understanding of how the IGP [] functions in the ordinary course bolsters the inference that the usual process did not unfold in this circumstance by suggesting that the filing failure did not result from Plaintiff's own ineptitude.").

As noted, Upstate IGRC informed plaintiff how to proceed when a grievance is unfiled: by filing a new grievance with the inmate grievance program supervisor ("IGPS").  See Dkt. No. 27 at 14.  This Court has denied summary judgment where a plaintiff was not provided "any information about how to pursue administrative remedies when a grievance is unfiled and unanswered[,]" but instead was told by the prison only that there was "no record of a grievance[.]"  Stephanski v. Allen, No. 9:18-CV-0076 (BKS/CFH), 2020 WL 806331, at *10 (N.D.N.Y. Jan. 22, 2020), report and recommendation adopted, 2020 WL 777268 (N.D.N.Y. Feb. 18, 2020).  Additionally, where a plaintiff complained that he had not received a response to his grievance, and was informed that "Directive #4040 makes no provision for an inmate to refer grievances directly to Central Office, and that specific grievance concerns should be directed to the IGP Supervisor for the most expeditious means of resolution[,]" this Court denied summary judgment.  Woodward v. Lytle, No. 9:16-CV-1174 (NAM/DEP),

2018 WL 4643036, at *4-5 (N.D.N.Y. Sept. 27, 2018).  The Court noted that the defendants' argument that the plaintiff "had to appeal the non-response to his alleged unfiled grievance to the CORC," but observed that "DOCCS made no attempt to explain" that to the plaintiff.  Id. at *4.

An inmate must file a grievance within twenty-one days or seek an extension of time to file his grievance within forty-five days from the alleged incident.  See 7 N.Y.C.R.R. §§ 705.1(a)(1), 701.6(g)(1)(i)(a).  Therefore, following the guidance in Upstate's response, if an inmate refiled his grievance with the IGRC, he would need to do so within the time allowed under the regulations.  See Dkt. No. 27 at 14.  However, neither the regulations nor Upstate's response informed plaintiff of the timeline in which he should have refiled his grievance or sought an extension when no response from the IGRC was received.  See id.; see generally 7 N.Y.C.R.R. § 701.5; compare Rawls v. Rosenfield, No. 9:16-CV-0582 (LEK/CFH), 2017 WL 7050648, at *8 (N.D.N.Y. Nov. 28, 2017), report and recommendation adopted, 2018 WL 542249 (N.D.N.Y. Jan. 23, 2018) (granting summary judgment where the IGP supervisor "explained to plaintiff in writing on two occasions that he had the option to 'follow the directions on the form and appeal the decision to the Superintendent.'"), with Reid v. Marzano, No. 9:15-CV-761 (MAD/CFH), 2017 WL 1040420, at *3 (N.D.N.Y. Mar. 17, 2017) ("Plaintiff's general knowledge of how to file a grievance was rendered useless if he was not properly informed how to proceed after not receiving a response.") (emphasis added).  Thus, it is not clear that the Upstate letter sufficiently instructed plaintiff how to proceed timely with an unfiled grievance.

Plaintiff had more than just a general knowledge of how to proceed with an unfiled grievance because of Upstate's recommendation that he should file a new grievance with the IGRC. See Dkt. No. 27 at 14. Whether that additional knowledge is sufficient to show that administrative remedies were available to plaintiff, particularly given the aforementioned timing issues remains a question of material fact. See Williams, 829 F.3d at 126 ("[T]he purported options for relief provided by defendants, to the extent they are even available to an inmate in Williams's situation, only increase confusion regarding the avenues available to pursue an appeal."); see also Woodward, 2018 WL 4643036, at *4-5.

Finally, plaintiff alleges that he was housed in the SHU at all relevant times, (Dkt. No. 29 at 1), but has not produced evidence to support the contention. See generally Compl; Dkt. No. 27. Although it is not clear whether plaintiff was housed in the SHU, this Court has applied Williams even when an inmate is not housed in the SHU. See, e.g., Maldonado, 2020 WL 1159426, at *16-17; Nolan, 2018 WL 4732778, at *12; Britt, 2019 WL 3365766, at *8-10. Even still, to survive summary judgment, plaintiff must produce sufficient evidence of unavailability of administrative remedies. See, e.g., Grayson, 2018 WL 6933296, at *6 (extending Williams but granting summary judgment where the plaintiff's only evidence was his amended complaint and deposition testimony). Here, plaintiff relies on his verified complaint, a copy of his grievance, a copy of his letter to the Superintendent, his response, and his supplemental response, which suggest that administrative remedies may have been unavailable to him where his grievance was unfiled and unanswered. Cf. Maldonado, 2020 WL 1159426, at *17

19

(denying summary judgment where the plaintiff's supported his allegations only by his deposition testimony and produced no copies of grievances or correspondence).

As plaintiff raises genuine issues of material fact as to whether administrative remedies were available to him, the undersigned recommends denying defendants' Motion for Summary Judgment.


## IV. Motion to Dismiss

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (explaining that the plausibility test "does not

impose a probability requirement . . . it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted).  Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  "If the defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through 'the prison chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct." Coleman v. Racette, No. 9:18-CV-0390 (MAD/CFH), 2021 WL 4312392, at *5 (N.D.N.Y. May 27, 2021), report and recommendation adopted, No. 18-CV-0390 (MAD/CFH), 2021 WL 3508342 (N.D.N.Y. Aug. 10, 2021) (quoting Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981)).  Instead, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti, 983 F.3d at 618 (quoting Iqbal, 556 U.S. at 676). "The violation must be established against the supervisory official directly."  Id.

In Tangreti, the Second Circuit explained that

[t]o state a claim under the Eighth Amendment on the basis that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of

serious harm to their current or future health, and (b) that the defendant acted with deliberate indifference.

983 F.3d at 618-19 (internal quotation marks and citations omitted).  "Deliberate indifference . . . means the official must know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 619 (quoting Vega v. Semple, 963 F.3d 259, 273 (2d Cir. 2020)) (internal quotation marks omitted).

### B.  Plaintiff's Allegations

Plaintiff raises two Eighth Amendment claims related to defendants D.S.S. Frasier and Supt. Miller: (1) cruel and unusual punishment by subjecting him to potential COVID-19 exposure, and (2) a failure to protect him from both COVID-19 exposure and an inmate attack.  See Compl. at 5, 8-9.   First, plaintiff contends that defendants Frasier and Miller, as supervisors of Great Meadow, failed to enforce New York State COVID-19 policies by allowing inmates to be lined up without social distancing.  See id. at 7-8.[15]   Second, plaintiff alleges that defendants "were aware of the numerous inmate on inmate attacks" that "pose[d] a substantial risk of serious harm to inmates including plaintiff[,]" and "as supervisors these two defendants knew about these prior attacks including a riot where multiple inmates were slashed in the G.M.C.F. yard that [] plaintiff was a witness to several months ago."  Id. at 9, ¶9.  Plaintiff contends that "[t]he prior attacks on plaintiff [were] similar enough that any steps defendant could have taken to

---

[15] Plaintiff explained that, "[t]he ongoing threat of the pandemic . . . allows inmates to wear facial coverings[.]"  Compl. at 10.  It is unclear whether plaintiff or others in the yard were wearing masks at the time of the incident, or if plaintiff is attempting to suggest that defendants should have encouraged mask use.

alleviate the danger posed by attacks would have reduced the risk to plaintiff and if defendants would have taken such steps plaintiff would not have been slashed from behind[.]"  Id.  Specifically, plaintiff claims that on October 4, 2020, cameras in the yard were turned off, and corrections officers failed to conduct mouth checks on the inmates entering the yard.  See id. at 9, ¶¶10-11.

### C.  Defendants' Motion to Dismiss

In the alternative, defendants move to dismiss the complaint against defendants Frasier and Miller, arguing that plaintiff did not allege their personal involvement.  See Dkt. No. 23-1 at 11-14.  Defendants do not directly address plaintiff's COVID-19 allegations.  See Dkt. No. 23-1 at 11-13.  Instead, they state that "[p]laintiff has offered no specific information to establish that he was incarcerated under conditions posing a substantial risk of harm."  Id. at 13.  As to the inmate attack, defendants argue that plaintiff failed to allege defendants' subjective involvement or that there was a "known substantial risk of inmate attacks which were long-standing, pervasive, well-documents, or expressly noted by prison officials[.]"  Id.

In response, plaintiff summarily states that he "[a]lleged personal involvement with respect to defendant[s] Frasier and Miller," and that he "chooses to rely solely on [his] verified complaint for such facts pertaining to Fra[s]ier and Miller."  Dkt. No. 27 at 8.

### D.  Analysis

To prove that a defendant failed to protect a plaintiff or subjected him to conditions of confinement that constitute cruel and unusual punishment, an inmate's allegations must satisfy both an objective and subjective prong.  See Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996).  As to the objective prong of an Eighth Amendment

failure-to-protect claim, "a plaintiff must demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs such that the conditions pose an unreasonable risk of serious damage to his health[.]" H'Shaka v. O'Gorman, 444 F. Supp. 3d 355, 377 (N.D.N.Y. 2020) (citations and internal quotation marks omitted); see also Burroughs v. Mitchell, 325 F. Supp. 3d 249, 270 (N.D.N.Y. 2018) (citation and internal quotation marks omitted) ("In order to succeed on a claim of failure to protect, the inmate must establish [] that a substantial risk to his safety actually existed[.]").

As to the subjective prong, Eighth Amendment "claims cannot be based on a defendant's knowledge of a 'general risk' of harm to an inmate." Racette, 2021 WL 4312392, at *5; see, e.g., Hogan v. Fischer, No. 09-CV-6225, 2012 WL 4845609, at *6 (W.D.N.Y. Oct. 10, 2012) vacated in part on other grounds, 738 F.3d 509 (2d. Cir. 2013) (internal citation omitted) (holding that the failure to protect the plaintiff from a general threat of harm is insufficient to raise a failure-to-protect claim under the Eighth Amendment). Rather, a plaintiff must demonstrate "that the officials being sued were exposed to information concerning the risk and thus, must have known about it." Fisher v. Miller, No. 9:16-CV-1175 (GTS/ATB), 2018 WL 4610679, at *5 (N.D.N.Y. Apr. 30, 2018), report and recommendation adopted, 2018 WL 3854000 (N.D.N.Y. Aug. 14, 2018) (citations and internal quotation marks omitted). "[T]he defendant official [must have] acted with a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (citation and internal quotation marks omitted).

### 1.  COVID-19 Exposure

This Court has agreed with many "other courts that an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." Bradshaw v. Brand, No. 9:21-CV-0942 (DNH/TWD), 2021 WL 4402262, at *3 (N.D.N.Y. Sept. 27, 2021) (quoting Chunn v. Edge, 465 F. Supp. 3d 168, 200-201 (E.D.N.Y. 2020) (citing cases)); see also Jolly, 76 F.3d at 477  ("[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease.").  Therefore, plaintiff must show that "defendants acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [plaintiff] even though the defendant[ ] knew, or should have known, that the condition posed an excessive risk to health or safety." Sitts v. Delaware Cnty. Corr. Facility, No. 9:21-CV-0047 (GTS/DJS), 2021 WL 2711558, at *2 (N.D.N.Y. July 1, 2021) (quoting Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)) (quotation marks omitted).

Plaintiff contends that defendants violated a state mandate requiring social distancing. See Compl. at 7, ¶¶4, 13-15.  First, "the violation of a state rule, regulation, or statute does not, on its own, give rise to a constitutional claim." Sitts, 2021 WL 2711558, at *2.  Second, plaintiff does not allege that he was "confined in an environment that posed a substantial risk of transmission[.]"  Id.  Plaintiff does not attest to how long he was in close proximity to other inmates, or whether he was near anyone who tested positive for COVID-19 or displayed any symptoms. See, e.g., Bradshaw, 2021 WL 4402262, at *4 ("[T]he Court has no basis to plausibly infer from the allegations in the complaint that any of the unmasked officials who delivered items to, or retrieved items from, plaintiff's cell were infected with COVID-19.").  Further, plaintiff

does not allege that defendants Frasier or Miller took any direct action to place plaintiff at risk or knew of such actions by other officers and failed to act with reasonable care. See Sitts, 2021 WL 2711558, at *2. As such, plaintiff has failed to raise allegations that "plausibly suggest that plaintiff was at substantial risk of serious harm or that defendants unreasonably or with deliberate indifference ignored that risk." Id.

### 2.  Inmate Attack

As to plaintiff's claim regarding the inmate attack, "he must demonstrate a substantial risk of inmate attacks [which were] longstanding, pervasive, well-documented, or expressly noted by prison officials . . . ." Fisher, 2018 WL 4610679, at *5 (citations and internal quotation marks omitted). "Even if defendants were negligent . . . in failing to properly search the inmates entering the yard, this would not amount to a constitutional violation[,]" as "negligence does not state a claim under section 1983." Madison v. Hoey, No. 9:03-CV-749 (FJS/GJD), 2009 WL 818956, at *9 (N.D.N.Y. Mar. 26, 2009).

Plaintiff claims that there were "prior attacks" at Great Meadow, but he provides almost no details about the attacks or whether they were related to plaintiff. Compl. at 9. "Courts have found that a substantial risk of harm can only be demonstrated where there is evidence of a previous altercation between a plaintiff and his attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker." Johnson v. Eigo, No. 9:19-CV-1075 (LEK/DJS), 2021 WL 2792245, at *4 (N.D.N.Y. Apr. 22, 2021), report and recommendation adopted as modified, No. 9:19-CV-1075 (LEK/DJS), 2021 WL 2659812 (N.D.N.Y. June 29, 2021) (quotation marks and citations omitted). Plaintiff failed to identify his attacker, whether

he had been attacked by this inmate before, or whether he complained to Great Meadow about this inmate.  See Compl. at 8 ("Plaintiff was slashed from behind by an unidentified assailant.").  Moreover, beyond his own conclusory claims, plaintiff does not support his contentions that cameras in the yard were turned off, that the yard "is known for assaults with weapons," or that safety measures were not being taken with inmates entering the yard.  Compl. at 9-10; see also Mitchell v. New York, No. 9:14-CV-0934 (TJM/DEP), 2015 WL 13019618, at *3 (N.D.N.Y. Mar. 11, 2015) (finding that the "plaintiff's conclusory claim that the 'common area' had a 'propensity to be highly violate' due to a 'blind spot,' is insufficient to state a claim.").  As such, plaintiff fails to satisfy the objective prong's showing that he was incarcerated under conditions posing a substantial risk of serious harm.

As to the subjective prong, plaintiff states that "these two defendants knew about these prior attacks" but fails to explain how defendants allegedly knew of the attacks or what specific information defendants had regarding them.  Compl. at 9, ¶9.  Insofar as plaintiff contends that he "was a witness" to a riot in the yard "several months ago[,]" he fails to explain how, if at all, this would alert defendants to the specific risk of attack on him several months later.  Id.; Madison, 2009 WL 818956, at *9-10 (rejecting the plaintiff's argument that a gang assault would have "alerted to the defendants to the need for increased security or that plaintiff was in danger[,]" concluding that it was "unclear to what 'incidents' plaintiff was referring to or how these 'incidents' would have altered defendants about a danger to plaintiff or to inmates in general.").  Plaintiff presents no support for his allegation that either Frasier or Miller were aware of the risk to plaintiff and failed to act with reasonable care.  See generally Compl.; see also Jones

v. McCarthy, No. 9:18-CV-947 (GLS/DJS), 2019 WL 4396808, at *2 (N.D.N.Y. June 10, 2019), report and recommendation adopted, 2019 WL 4393072 (N.D.N.Y. Sept. 13, 2019) ("The Complaint does not . . . allege any specific information about when these conditions allegedly existed, for how long, whether either named Defendant was ever notified of these conditions and, if so, how he responded regarding them."). Where a plaintiff alleged that the superintendent of the correctional facility "refused to acknowledge that cameras are needed throughout [the facility] in order to protect inmates from abuse by prison staff," the court dismissed the claim, finding that "there are no allegations that [the Superintendent] had knowledge of a dangerous situation with regard to [the plaintiff] in particular and failed to act; . . . that he was aware of other similar assaults; or that he was in the vicinity during the assault and failed to come to [the plaintiff's] aid." Hogan, 2012 WL 4845609, at *6 (internal quotation marks omitted). Similarly, plaintiff has presented insufficient allegations to support a conclusion that defendants Frasier or Miller had any knowledge of a dangerous situation regarding plaintiff and failed to act. Even construing plaintiff's complaint liberally, he has failed to raise a plausible claim for relief against defendants Frasier and Miller. Accordingly, it is recommended that defendants' motion to dismiss be granted.

## V. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment and partial Motion to Dismiss (Dkt. No. 23) be **GRANTED IN PART** and **DENIED IN PART**:

28

(1) Defendants' Motion for Summary Judgment be **DENIED**; and

(2) Defendants' partial Motion to Dismiss claims against defendants Frasier

and Miller be **GRANTED**; it is further

**RECOMMENDED**, that the Court hold an exhaustion hearing; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-

Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.

Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health

and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P.

6(a), 6(e), 72.[16]

Dated: November 18, 2021
Albany, New York

*Christian F. Hummel*

Christian F. Hummel
U.S. Magistrate Judge

---

[16] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  See Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  See id. § 6(a)(1)(C).