**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SINCERE SMITH,

                         Plaintiff,

      v.                                        No. 9:20-CV-1435
                                                (GTS/CFH)

B. HUGGLER, A. DOWNING, and
K. BROOKS,

                        Defendants.

---

**APPEARANCES:**                                  **OF COUNSEL:**

Sincere Smith
Plaintiff pro se
18-A-4013
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

HON. LETITIA JAMES                      BRENDA T. BADDAM, ESQ.
New York State Attorney General       Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Sincere Smith who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS") at Great Meadow Correctional Facility ("Great Meadow C.F."), brings this action pursuant to 42 U.S.C. § 1983 against Defendants, Correctional Officers B. Huggler, A. Downing, and K. Brooks, for

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

violations of his constitutional rights under the Eighth Amendment. See Dkt. No. 38 ("Am. Compl.").

Presently before the Court is Plaintiff's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 48. Defendants opposed the motion and cross moved for summary judgment. See Dkt. No. 51. Plaintiff opposed the cross motion. See Dkt. No. 53. For the following reasons, it is recommended that Plaintiff's motion be denied and Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Facts[2]

---

[2] In support of the motions, the parties submitted Statements of Material Facts and responses thereto. Dkt. No. 48; Dkt. No. 51-2; Dkt. No. 51-7; and Dkt. No. 53 at 1-3. Local Rule 56.1(a) states:

Summary Judgment Procedure

(a) Statement of Material Facts: Any motion for summary judgment shall contain a separate Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.

The moving party shall also advise pro se litigants about the consequences of their failure to respond to a motion for summary judgment. See also L.R. 56.2. For the recommended Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, visit the District's webpage at Notification of Consequences.

(b) Response to Statement of Material Facts: The opposing party shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. In addition, the opposing party's Response may set forth any assertions that the opposing party contends are in dispute

1. **Plaintiff**

It is undisputed that, on October 4, 2020, Plaintiff was involved in a physical altercation with another inmate in the recreational yard of Great Meadow C.F. Dkt. No. 48 at ¶ 2; Dkt. No. 51-5 at ¶ 4; Dkt. No. 51-5 at ¶ 4. The incident occurred while the inmates were lining up to leave the yard. Dkt. No. 51-4 at ¶ 7; Dkt. No. 51-5 at ¶7. As Plaintiff was waiting to be escorted to his dorm, an inmate approached Plaintiff from behind and made a "sudden slashing motion to the Plaintiff's face." Id. at ¶ 10. Defendants Brooks and Huggler, who were providing security coverage, were approximately twenty to thirty feet from Plaintiff when the incident occurred. Dkt. No. 51-3 at 58, 62; Dkt. No. 51-4 at ¶ 12, 15; Dkt. No. 51-5 at ¶ 12, 15.

Plaintiff testified that he "tussled" with the inmate and the inmate knocked him to the ground. Dkt. No. 51-3 at 50-51. While Plaintiff was on the ground, he turned around and saw Huggler and Brooks "standing there" and watching. Id. at 51, 59-60, 62. Plaintiff claims that he called out for help "a few times." Id. at 65.

2. **Defendants**

---

in a short and concise Statement of Additional Material Facts in Dispute, containing separately numbered paragraphs, followed by a specific citation to the record where the fact is established. The moving party may reply to the opposing party's contended assertions in a separate Reply Statement and/or its Reply Memorandum of Law.

Local Rule 56.1.

    In further support of the motions, the parties annexed exhibits. See Dkt. No. 48-2; Dkt. No. 51-3; Dkt. No. 51-5 at 6; Dkt. No. 51-6 at 6; Dkt. No. 53 at 13-18. The parties have not objected to the authenticity of any document referenced. Therefore, the undersigned will consider the documents in the context of the within motions. See United States v. Painting known as Hannibal, No. 07-CV-1511 (RJS), 2010 WL 2102484, at *1 n.2 (S.D.N.Y. May 18, 2010) (citing Daniel v. Unum Provident Corp., 261 F. App'x 316, 319 (2d Cir. 2008) (summary order) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party.")).

Huggler and Brooks saw Plaintiff engaged in a fight with another inmate and claim that they saw Plaintiff and the inmate "exchang[ing] closed fist punches to the face and torso[.]" Dkt. No. 51-4 at ¶ 11; Dkt. No. 51-5 at ¶ 11; Dkt. No. 51-3 at 123. Huggler and Brooks maintain that the incident lasted fifteen seconds and that they "immediately" approached the inmates and directed them to stop fighting. Id. at ¶¶ 13, 14, 15.

Defendant Downing escorted Plaintiff to the facility hospital and conducted a strip frisk. Dkt. No. 51-2 at ¶¶ 24, 26. Downing claims that he gave Plaintiff an order to pull his pants down, and a weapon fell out of his waistband. Dkt. No. 48-2 at 21. The weapon was a "ceramic type blade with a plastic wrapped handle." Id.

Plaintiff was examined and treated by a physician's assistant who noted that Plaintiff suffered a three-inch laceration to his face and a one-inch laceration to his neck requiring thirty-six sutures to his face and seven sutures to his neck. Dkt. No. 51-3 at 124.

### B. Procedural History

In October 2020, Plaintiff commenced the within action. Dkt. No. 2. Upon review of the complaint, the Court found that Plaintiff had sufficiently alleged an Eighth Amendment failure-to-protect claim against defendants B. Huggler, A. Downing, Sergeant John Doe, Superintendent Miller, and Deputy Superintendent of Security Frasier and directed defendants to respond. Dkt. No. 11.

On March 30, 2021, Huggler, Downing, Miller, and Frasier moved to dismiss the complaint. Dkt. No. 23. On November 18, 2021, the undersigned issued a Report and Recommendation which recommended that the portion of Defendants' motion requesting dismissal of all claims against Miller and Frasier be granted for failure to state a claim pursuant to Rule 12(b)(6). Dkt. No. 30 (November R&R). On January 18, 2022, District

Judge Glenn T. Suddaby adopted the Report and Recommendation.[3]  Dkt. No. 31.

On January 26, 2022, Downing and Huggler filed an answer.  Dkt. No. 32.  On March 18, 2022, Plaintiff filed a motion to amend the complaint.  Dkt. No. 38.  In a Decision and Order issued on May 5, 2022, the Court granted the motion in part, and directed defendants Huggler, Brooks, and Downing to respond to the Eighth Amendment failure to intervene claims.  Dkt. No. 41.

On May 23, 2022, Plaintiff was deposed.  Dkt. No. 51-2.  On June 29, 2022, defendants filed an answer to the amended complaint.  Dkt. No. 45.

On July 28, 2022, Plaintiff filed the within motion pursuant to Fed. R. Civ. P. 56, seeking partial judgment as a matter of law.  Dkt. No. 48.  Defendants oppose the motion and cross move for summary judgment.  Dkt. No. 51.

## II. Motions for Summary Judgment[4]

Plaintiff moves for judgment as a matter of law against Huggler and Brooks, arguing that the evidence establishes that Defendants were in the vicinity of the assault and failed to come to his aid.  See Dkt. No. 48.  Defendants argue they are entitled to summary judgment because Plaintiff cannot establish that Defendants were deliberately indifferent to an excessive risk to Plaintiff's safety.  See Dkt. No. 51-1 at 11-15.  Defendant Downing also argues summary judgment is warranted because he was not personally involved in any constitutional violation.  Id. at 5-9.  Defendants alternatively argue that they are entitled to

---

[3] In an Order filed on January 26, 2022, then Chief Judge Suddaby dismissed the claims asserted against John Doe, sua sponte.  Dkt. No. 34.

[4] Copies of all unpublished decisions cited herein, unless otherwise indicated, have been provided to plaintiff.

qualified immunity. Id. at 15-17.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read

> to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law.

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002) (quoting Heublein, Inc. v. U.S., 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, 996 F.2d at 1461.

### B. Eighth Amendment

"The Eighth Amendment requires prison officials to take 'reasonable measures to guarantee the safety of inmates' in their custody." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)). The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. See Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985).

### 1. Failure to Intervene

To establish liability on the part of a defendant under a failure to intervene theory, a plaintiff must establish that (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene. Jean-Laurent v. Wilkinson, 540 F.Supp.2d 501, 512 (S.D.N.Y. 2008), aff'd sub nom. Jean-Laurent v. Wilkerson, 461 F. App'x 18 (2d Cir. 2012).

In addressing a failure to intervene claim, the Court must analyze "whether a defendant had a realistic chance to intercede," which includes examining factors such as "the number of officers present, their relative placement, the environment in which they acted, and the nature of the assault[.]"  Figueroa v. Mazza, 825 F.3d 89, 107 (2d Cir. 2016).  Moreover, "the assault's duration will always be relevant and will frequently assume great importance." Id.  However, there is no "bright line rule for the amount of time under which a failure to intervene claim is not actionable." Mason v. Moore, No. 9:17-CV-1086 (GLS/DJS), 2020 WL 555943, at *5 (N.D.N.Y. Jan. 13, 2020) (internal quotation marks omitted), report and recommendation adopted, 2020 WL 554816 (N.D.N.Y. Feb. 4, 2020). "[T]he issue of whether an officer can be held liable on a failure to intervene theory is generally a question of fact for the jury to decide." Alcaide v. Smith, No. 9:17-CV-1239 (GTS/DJS), 2019 WL 5197214, at *4 (N.D.N.Y. Aug. 6, 2019) (internal quotation marks omitted), report and recommendation adopted, 2019 WL 4621963 (N.D.N.Y. Sept. 24, 2019).  Stroman v. Ranze, No. 9:18-CV-149 (GLS/TWD), 2019 WL 7494384, at *8 (N.D.N.Y. Dec. 13, 2019) (reasoning that the issue of whether an officer had a reasonable opportunity to stop the alleged use of force, may only be decided as a matter of law if a "jury could not possibly conclude that the officer had a reasonable opportunity to intervene.") (internal citations and

citations omitted), report and recommendation adopted, 2020 WL 68610 (N.D.N.Y. Jan. 7, 2020); Stephens v. Venettozzi, No. 13-CV-5779, 2016 WL 929268, at *15 (S.D.N.Y. Feb. 24, 2016) (internal citation and citations omitted), report and recommendation adopted sub nom., 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016).

In this matter, Huggler and Brooks admit that they witnessed the fight and do not dispute that Plaintiff was attacked from behind and that another inmate made "slashing motions" to Plaintiff's face. See generally Dkt. No. 51-4 and Dkt. No. 51-5; Dkt. No. 51-3 at 123. Defendants also aver that they saw the inmates "exchanging" punches to the face and torso. Id. Therefore, the only issue to be resolved is whether Huggler and Brooks had "a realistic opportunity to intervene and prevent the harm." See Stroman, 2019 WL 7494384, at *8 (assuming that the conduct occurred and constituted force, the question remaining was whether the defendants had an opportunity to recognize and stop the assault). In this regard, Huggler and Brooks claim that they did not have a "reasonable opportunity to break up the fight" and that Plaintiff "never communicated any fear or information" indicating he was "under a substantial risk of harm." Id. at ¶¶ 18-20. Huggler and Brooks aver that they "immediately" approached the inmates and that the incident "spanned a total of 15 seconds." Dkt. No. 51-4 at ¶¶ 13-15; Dkt. No. 51-5 at ¶¶ 13-15.

Conversely, Plaintiff testified that he saw Huggler and Brooks twenty feet away, watching and "standing there during the entire incident." Dkt. No. 51-3 at 51, 58, 59, 60, 62, 91-93. Plaintiff also testified that he called out for help "a few times" during the attack. Id. at 65. During his deposition, Plaintiff testified that he did not know "exactly how long the attack was for." Dkt. No. 51-3 at 57. However, in response to Defendants' Statement of Material Facts, Plaintiff claims that the attack lasted one minute. Dkt. No. 53 at 2.

The competing evidence before the undersigned rests on the credibility of Plaintiff on one hand and Huggler and Brooks on the other. Generally, credibility issues are questions of fact for resolution by a jury and are inappropriately decided by a court on motion for summary judgment. Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). Here, even assuming that the incident lasted fifteen seconds, this fact alone does not support summary judgment in favor of Defendants. See Mason, 2020 WL 555943, at *5 (rejecting the defendants' argument that there was no opportunity to intercede where the incident lasted only fifteen to twenty seconds when the plaintiff, while in the defendants' "full view," was "punched and kicked multiple times[]"). It is undisputed that Plaintiff suffered lacerations requiring forty-three sutures to his face and neck. Dkt. No. 51-3 at 124. Considering the extent of Plaintiff's injuries and Defendants' admissions regarding what they observed at the scene, a reasonable jury could conclude that Huggler and Brooks "had a realistic opportunity to intervene and prevent harm from occurring." See Stroman, 2019 WL 7494384, at *8 (recognizing that although the "incident was over quick[,]" because [the defendant] "was able to kick the plaintiff multiple times," the defendants had realistic opportunity to intervene); see also Alcaide, 2019 WL 5197214, at *3 (denying the defendants' motion for summary judgment, finding that, "[i]f [the defendants] were present when the alleged incident involving [the p]laintiff's head took place, they may well have been, depending on a variety of circumstances, in a position to have intervened[.]").

As the issue of whether Defendants had a reasonable opportunity to intervene, and failed to do so must be resolved by the jury, summary judgment on the issue of whether Defendants' "inaction rose to the level of deliberate indifference" is not appropriate. Rosen v. City of New York, 667 F.Supp.2d 355, 361 (S.D.N.Y. 2009) (citation omitted).

Parties have not met their burden of showing that there is no genuine issue of material fact as to Plaintiff's failure-to-intervene claim.  Accordingly, it is recommended that Plaintiff's motion for partial summary judgment and Defendants' cross motion for summary judgment, on this ground, be denied.

### 2. Failure to Protect

An Eighth Amendment claim that officers failed to protect an inmate from an attack by a fellow inmate is "quite different" from the claim that an officer stood by and permitted an attack to continue. Oliver v. Knight, No. 3:19-CV-00488, 2020 WL 134125, at *2 (M.D. Tenn. Jan. 13, 2020) (citing Davidson v. Cannon, 474 U.S. 344, 348 (1986)); see Saracina v. DuBrey, No. 9:17-CV-864 (BKS/DJS), 2021 WL 4775191, at *5 (N.D.N.Y. Oct. 13, 2021) (declining to address a "failure to protect" claim where the complaint advanced only a "failure to intervene" claim).

Although the original complaint included failure-to-protect claims, these claims were not included in Plaintiff's amended complaint. See generally Am. Compl; Dkt. No. 41 at 5 (finding that the amended complaint sufficiently alleged a failure to intervene claim against Defendants); Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).  However, during Plaintiff's deposition, counsel for Defendants used the terms "failure to intervene" and "failure to protect" interchangeably. See Dkt. No. 51-3 at 42, 91, 92, 93.  Moreover, Plaintiff and Defendants have presented arguments and case law in favor of summary judgment on a "failure-to-protect" claim. Therefore, construing the pleadings liberally and affording Plaintiff the special solicitude due

to him as a pro se litigant, the undersigned will consider this claim and whether summary judgment is appropriate on this ground.

To state a claim for failure to protect under the Eighth Amendment, a plaintiff must demonstrate that (1) he was "incarcerated under conditions posing a substantial risk of serious harm" (objective prong); and (2) prison officials acted with deliberate indifference to that risk and the inmate's safety (subjective prong).  Farmer, 511 U.S. at 834.

As to the objective prong, the deprivation must be "sufficiently serious," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation marks omitted)), and "contemplate[ ] 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'"  Id. (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)).

Here, Defendants do not dispute that Plaintiff faced a substantial risk of serious harm.  See Dkt. No. 51-1 at 13.  Rather, Defendants challenge the subjective prong of Plaintiff's failure-to-protect claim, arguing that he cannot establish that Defendants acted with a "sufficiently culpable state of mind" or "deliberate indifference to his health and safety."  Id.

As to the subjective prong, the plaintiff must demonstrate that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety.  See Farmer, 511 U.S. at 837.  The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  The plaintiff must "show that the defendants actually inferred from that disclosure that a substantial risk of serious harm existed." Murray v. Goord, 668 F.Supp. 2d 344, 359 (N.D.N.Y. 2009).  An officer's accidental failure to protect inmates from harm by other prisoners is not sufficient to state an Eighth Amendment violation.  Farmer,

12

511 U.S. at 840.

    Here, Plaintiff fails to satisfy the subjective prong of the Eighth Amendment analysis. The record is devoid of any evidence that Plaintiff informed Defendants that a particular inmate posed any specific risk to his safety or engaged in any threatening or assaultive behavior toward Plaintiff.  Indeed, Plaintiff was attacked from behind, without warning or provocation.  Plaintiff testified that he did not learn the identity of his attacker until after the incident and did not know the inmate's motivation.  Dkt. No. 51-3 at 52-53.  Plaintiff, who has been in DOCCS custody since 2018, testified that he has never been threatened by any other inmates and never requested protective custody.  Id. at 15, 74-75.

    In an attempt to satisfy the subjective prong, Plaintiff testified that he witnessed four "attacks" and a riot in 2020.  Dkt. No. 51-3 at 72.  These facts, even if true, do not suggest that there was a longstanding and pervasive history of violent incidents sufficient to satisfy the subjective prong.  "[I]f there is 'evidence that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past and the circumstances suggest that the [defendant] . . . had been exposed to information concerning the risk,' a factfinder may infer that the defendant had actual knowledge of the risk."  Warren v. Goord, 579 F. Supp. 2d 488, 495 (S.D.N.Y. 2008), aff'd, 368 F. App'x 161 (2d Cir. 2010).  However, a failure to protect claim can not to be based on a defendant's knowledge of a "general risk" of harm to an inmate.  See, e.g., Hogan v. Fischer, No. 09–CV–6225, 2012 WL 4845609, at *6 (W.D.N.Y. Oct. 10, 2012) (internal citation omitted) (holding that the failure to protect the plaintiff against a general threat of harm is insufficient to raise a failure-to-protect claim under the Eighth Amendment), vacated in part on other grounds 738 F.3d 509 (2d. Cir. 2013).  Here, Plaintiff has not proffered evidence that

13

Defendants were aware of these incidents or the riot.  Moreover, Plaintiff concedes that he was not involved in any of those incidents and testified that the riot, "didn't have nothing to do with me."  Dkt. No. 51-3 at 73-74.

With respect to Plaintiff's argument that Huggler and Brooks failed to implement social distancing requirements, see Dkt. No. 48-1 at 6, even assuming that COVID-19 regulations were not followed, "the violation of a state rule, regulation, or statute does not, on its own, give rise to a constitutional claim." Smith v. Miller, No. 9:20-CV-1435 (GTS/CFH), 2021 WL 6503602, at *12 (N.D.N.Y. Nov. 18, 2021) (citation omitted).  This allegation, without more, does not suggest that Huggler and Brooks were deliberately indifferent to a substantial risk of harm.

Accordingly, it is recommended that Defendants' motion for summary judgment be granted on Plaintiff's failure-to-protect claim.  See, e.g., Sullivan v. Graham, No. 09-CV-1311 (TJM/DRH), 2011 WL 4424355, at *6 (N.D.N.Y. Aug. 5, 2011) (dismissing failure-to-protect claim where the plaintiff "had no advance knowledge of the attack, did not know most of the inmates who assaulted him, had no fear of being assaulted, and did not think that he was in any danger or had any conflicts with any other inmate prior to the attack"), report and recommendation adopted, 2011 WL 4424350 (N.D.N.Y. Sept. 21, 2011).

### C.  Personal Involvement

In the alternative, Downing argues that he was not personally involved in the alleged Eighth Amendment violations.  "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town

of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  "If the defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through 'the prison chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct."  Coleman v. Racette, No. 9:18-CV-0390 (MAD/CFH), 2021 WL 4312392, at *5 (N.D.N.Y. May 27, 2021) (quoting Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981)), report and recommendation adopted, 2021 WL 3508342 (N.D.N.Y. Aug. 10, 2021).  Instead, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  Tangreti v. Bachman, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)).  "The violation must be established against the supervisory official directly."  Id.  Thus, in this case, to avoid summary judgment, Plaintiff must establish that each defendant violated the Eighth Amendment by his "own conduct, not by reason of [his or her] supervision of others who committed the violation" and may not "rely on a separate test of liability specific to supervisors."  Id. at 619 (citations omitted).

   Upon review, the undersigned finds that Plaintiff has failed to raise a triable issue of fact with respect to Downing's personal involvement.  Plaintiff states, in a conclusory manner, that Downing failed to intervene in the incident but Plaintiff testified that he did not know where Downing was at the time of the incident.  Dkt. No. 51-3 at 61.  Indeed, Plaintiff admits that he first saw Downing after the attack when Downing picked up the weapon from off of the floor.  Id.

   In support of the motion, Downing provided a declaration stating that he was not working in the yard when the incident occurred.  Dkt. No. 51-6 at ¶ 6.  Rather, Downing claims he did not witness the incident and that he did not arrive in the yard until after the

15

incident was "under control and plaintiff was already restrained." Dkt. No. 51-6 at ¶¶ 8-9. Downing's declaration is corroborated by the transcript of the disciplinary hearing, which Plaintiff provided in support of his motion. Dkt. No. 48-2 at 21-22.

Thus, the undersigned recommends that the Eighth Amendment failure-to-intervene claim against Downing be dismissed for lack of personal involvement.

### D. Qualified Immunity

Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if the plaintiff's allegations are accepted as true, there would be a constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F.Supp.2d 211, 230 (N.D.N.Y. 2002).

It is well-settled that on October 4, 2020, it was "clearly established that inmates have the right to be free from harm inflicted by fellow prisoners and that corrections officers have an obligation to protect inmates from a known and substantial risk of serious harm." Dublin

v. New York City Law Dep't, No. 10 CIV. 2971, 2012 WL 4471306, at *7 (S.D.N.Y. Sept. 26, 2012). Because a reasonable jury could conceivably accept Plaintiff's claim that Defendants' conduct was objectively unreasonable, Defendants are not entitled to qualified immunity for the alleged Eighth Amendment violations. Accordingly, it is recommended that Defendants' motion, on this ground, be denied.

### III. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that Plaintiff's motion for partial summary judgment (Dkt. No. 48) be **DENIED IN ITS ENTIRETY**; and it is further

**RECOMMENDED**, that Defendants' cross motion for summary judgment (Dkt. No. 51) insofar as it requests dismissal of Plaintiff's failure-to-protect claims and Plaintiff's claims against Downing be **GRANTED** and that such claims be **DISMISSED**; and it is further

**RECOMMENDED**, that Defendants' cross motion be **DENIED in all other respects**; and it is

**ORDERED,** that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15

(2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[5]


Dated: November 29, 2022
       Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[5]  If you are proceeding pro se and you are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. 6(a)(1(c).